**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| DAVID LEE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:06-cv-00592-WKW-CSC |
| | ) | |
| JOHN MCFARLAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Sheriff Jay Jones, Major Cary Torbert, Jr.[1], Lt. Corey Welch, Lt. Ray Roberson[2], Dr. John McFarland, and Nurse Linda Stewart, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On July 5, 2006, the Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama against these Defendants.  On July 14, 2006, this Court ordered Defendants to file a Special Report and Answer.  Pursuant to this Court's Order dated September 19, 2006, their Special Report and Answer are due September 27, 2006.

With regard to the first incarceration of which the Plaintiff complains, the Plaintiff was arrested on March 4, 2004, on charges of possession of a forged instrument in the second degree and FTP- Burglary in the Second Degree.  (Exhibit A, Inmate File of David Lee Smith[3], "Inmate File," Booking Sheet dated March 4, 2004.)  He was booked into the Lee County Detention Center that same day.  (Ex. A.)  He was committed to the custody of the Sheriff of Lee County on June 1, 2004, to serve 18 months split in the state penitentiary for a conviction of the Forgery

---

[1] Incorrectly designated in the Plaintiff's Complaint as Major "Tolbert."
[2] Incorrectly designated in the Plaintiff's Complaint as Lt. "Robinson."
[3] See Exhibit F, Affidavit of Cary Torbert, Jr., "Torbert Aff.," ¶ 42 for certification of Plaintiff's Inmate File.

charge. (Ex. A.) He was released into the custody of the Department of Corrections on July 22, 2004. (Exhibit B, Inmate File, Release Sheet dated July 22, 2004.)

With regard to his most recent incarceration, the Plaintiff was arrested on May 25, 2006, on a charge of probation violation. (Exhibit C, Inmate File, Inmate Booking Sheet dated May 25, 2006, pp. 2-3.) He was booked into the Lee County Detention Center that same day. (Ex. C.) On June 8, 2006, the Plaintiff's probation was revoked and he was committed to the custody of the Lee County Sheriff for an eighteen month split sentence. (Ex. C, p. 1.) The Plaintiff was released from the Lee County Detention Center to the Limestone Correctional Facility on July 18, 2006. (Exhibit D, Inmate File, Inmate Release Sheet dated July 18, 2006.)

## PLAINTIFF'S ALLEGATIONS

The Plaintiff's Complaint alleges the following three constitutional violations:

(1)     The Plaintiff first alleges that he was denied medical care during his most recent incarceration at the Lee County Detention Center (May 25, 2006 through July 3, 2006) as well as his prior incarceration at the Lee County Detention Center (April through July 2004). (Plaintiff's Complaint, pp. 2-4.)

(2)     The Plaintiff also alleges that his rights under the Americans with Disabilities Act were violated in that he was placed in a punishment cell, not a medical cell, and that he was treated as if he were being punished. He claims that he was denied adequate food (with regard to what he requires and in comparison to inmates in non-punishment cells) as well as the privileges of television, telephone, store, yard, chapel, and library. He alleges that he is locked down for 23 1/2 hours a day. (Plaintiff's Complaint, p. 3.)

(3)     The Plaintiff finally alleges that his cell was not cleaned and that it was "encrusted" with mold. (Plaintiff's Complaint, p. 3.)

The Plaintiff requests the following relief: (1) compensation for his pain and suffering; (2) to receive proper medical treatment and fair accommodation for his disabilities; and (3) punitive/corrective action taken against the Defendants. (Plaintiff's Complaint, p. 5.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit E, Affidavit of Sheriff Jay Jones[4], "Jones Aff.," ¶ 4; Exhibit F, Affidavit of Major Cary Torbert, Jr.[5], "Torbert Aff.," ¶ 4; Exhibit G, Affidavit of Lieutenant Ray Roberson[6], "Roberson Aff.," ¶ 4; Exhibit H, Affidavit of Lieutenant Corey Welch[7], "Welch Aff.," ¶ 4; Exhibit I, Affidavit of John McFarland, M.D.[8], "McFarland Aff.," ¶ 4; Exhibit J, Affidavit of Nurse Linda Stewart[9], "Stewart Aff.," ¶ 4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, mootness, the

---

[4] Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999. (Jones Aff. ¶ 2.)

[5] Cary Torbert, Jr., serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major. Major Torbert has worked with the Lee County Sheriff's Office for over 34 years. (Torbert Aff. ¶ 2.)

[6] Ray Roberson is employed with the Lee County Sheriff's Department and serves as Assistant Jail Administrator at the Lee County Detention Facility. Roberson has worked in the Lee County Detention Facility for twenty-three years and has obtained the rank of Lieutenant. One of Lieutenant Roberson's duties is to oversee the Lee County Detention Facility meal program. (Roberson Aff. ¶ 2.)

[7] Corey Welch is employed by the Lee County Sheriff's Office and is assigned to serve as a Corrections Officer at the Lee County Detention Center. Welch has worked as a correctional officer for over ten years, having obtained the rank of Lieutenant in November 2004. Lieutenant Welch is both a graduate of the Police Academy and the Alabama Jail Management School. (Welch Aff. ¶ 2.)

[8] John McFarland, M.D. is a licensed physician serving as an emergency room doctor with East Alabama Medical Center. Also, since 1994, Dr. McFarland has served as the treating physician for inmates at the Lee County Detention Facility. (McFarland Aff. ¶ 2.)

[9] Linda Stewart has been employed as a nurse with the Lee County Detention Center for over five years. Stewart is a Licensed Practical Nurse (L.P.N.) and has been licensed for over twenty-years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years. Nurse Stewart taught Nursing Assistance Clinicals for two years at Career Institute. She collected medical information for the law firm of Bellamy and Jones for three years, and she was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama for twelve years, prior to her coming to the Lee County Detention Facility. (Stewart Aff. ¶ 2.)

3

statute of limitations, and additional defenses presented below.  The Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility.  As Sheriff of Lee County, Jay Jones is responsible for promulgating the policies governing the Lee County Detention Facility.  (Jones Aff. ¶ 5.)

It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or Detention Center personnel.  All properly submitted nonmedical request forms are answered, and a copy is placed in the inmate's inmate file.  All medical request forms are forwarded to the medical staff to be answered, and a copy of the answered request form is filed in that inmate's medical file.  The Plaintiff was aware of the request procedure as evidenced by the request forms he has filed that were answered and are present in his inmate file.  (Jones Aff. ¶ 6; Torbert Aff. ¶ 5; Roberson Aff.  ¶ 5; Welch Aff. ¶ 5.)  Requests for medical attention, telephone calls, or other matters must be made in writing on an Inmate Request Form.  An exception exists for requests of an emergency nature which will be handled immediately without a written request. Inmates housed in the Lee County Detention Center will be furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing.  Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate.  The officer receiving the request form is to answer the request if possible.  If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered.  If the

request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day. (Jones Aff. ¶ 7; Torbert Aff. ¶ 6; Roberson Aff. ¶ 6; Welch Aff. ¶ 6.)  The nonmedical Defendants have never received any request form from the Plaintiff concerning any of the allegations made the basis of his Complaint. (Jones Aff. ¶ 8; Torbert Aff. ¶ 7; Roberson Aff. ¶ 7; Welch Aff. ¶ 7.)

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion well-being. (Jones Aff. ¶ 9; Torbert Aff. ¶ 8; Roberson Aff. ¶ 8; Welch Aff. ¶ 8; McFarland Aff. ¶ 5; Stewart Aff. ¶ 5.)  Medical care rendered to inmates in the Lee County Detention Center is delivered under the direction of a licensed health care provider. (Jones Aff. ¶ 10; Torbert Aff. ¶ 9; Roberson Aff. ¶ 9; Welch Aff. ¶ 9; McFarland Aff. ¶ 6; Stewart Aff. ¶ 6.)  No health care personnel or Detention Center officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services. (Jones Aff. ¶ 11; Torbert Aff. ¶ 10; Roberson Aff. ¶ 10; Welch Aff. ¶ 10; McFarland Aff. ¶ 7; Stewart Aff. ¶ 7.)  Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively. (Jones Aff. ¶ 12; Torbert Aff. ¶ 11; Roberson Aff. ¶ 11; Welch Aff. ¶ 11; McFarland Aff. ¶ 8; Stewart Aff. ¶ 8.)  Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority. (Jones Aff. ¶ 13; Torbert Aff. ¶ 12; Roberson Aff. ¶ 12; Welch Aff. ¶ 12; McFarland Aff. ¶ 9; Stewart Aff. ¶ 9.)

5

It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time.  (Jones Aff. ¶ 14; Torbert Aff. ¶ 13; Roberson Aff.  ¶ 13; Welch Aff. ¶ 13; McFarland Aff. ¶ 10; Stewart Aff. ¶ 10.)  Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:

    a.    <u>Verbal Request</u>:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

    b.    <u>Written Request</u>:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

(Jones Aff. ¶ 15; Torbert Aff. ¶ 14; Roberson Aff.  ¶ 14; Welch Aff. ¶ 14; McFarland Aff. ¶ 11; Stewart Aff. ¶ 11).  As part of the booking process, inmates are informed of the methods by which they may maintain medical treatment during the booking process.  (Jones Aff. ¶ 19; Torbert Aff. ¶ 18; Roberson Aff. ¶ 18; Welch Aff. ¶ 18.)

Requests for medical treatment will be accepted by members of the Detention Center staff at any time.  (Jones Aff. ¶ 16; Torbert Aff. ¶ 15; Roberson Aff. ¶ 15; Welch Aff. ¶ 15; McFarland Aff. ¶ 12; Stewart Aff. ¶ 12.).  When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request.  It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner.  (Jones Aff. ¶ 17; Torbert Aff. ¶ 16; Roberson Aff. ¶ 16; Welch Aff. ¶ 16.)  Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.  (Jones Aff. ¶ 17; Torbert Aff. ¶ 16; Roberson Aff. ¶ 16; Welch Aff. ¶ 16; McFarland Aff. ¶ 13; Stewart Aff. ¶ 13.) Medical requests of an emergency nature are to be handled immediately.  (Jones Aff. ¶ 18; Torbert

Aff. ¶ 12; Roberson Aff. ¶ 17; Welch Aff. ¶ 17; McFarland Aff. ¶ 14; Stewart Aff. ¶ 14.)  The Detention Center nurses, under the direction of the Detention Center Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center.  (Jones Aff. ¶ 20; Torbert Aff. ¶ 19; Roberson Aff. ¶ 19; Welch Aff. ¶ 19; McFarland Aff. ¶ 15; Stewart Aff. ¶ 15.)  All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official.  Should the physician request, a Detention Center officer will be present for any and all examinations the treating physician deems appropriate.  (Jones Aff. ¶ 21; Torbert Aff. ¶ 20; Roberson Aff. ¶ 20; Welch Aff. ¶ 20; McFarland Aff. ¶ 16; Stewart Aff. ¶ 16.)

Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates.  All inmates are required to pay a fee for non-emergency treatment.  Inmates will not be denied medical treatment.  When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.  (Jones Aff. ¶ 22; Torbert Aff. ¶ 21; Roberson Aff. ¶ 21; Welch Aff. ¶ 21; McFarland Aff. ¶ 17; Stewart Aff. ¶ 17.)

Per the policy of the Lee County Sheriff's Office, Sheriff Jones, Major Torbert, Lieutenant Roberson, and Lieutenant Welch always defer to the instructions of the trained medical professionals on all medical issues.  (Jones Aff. ¶ 23; Torbert Aff. ¶ 22; Roberson Aff. ¶ 22; Welch Aff. ¶ 12.)  Per the policy of the Lee County Sheriff's Office, Nurse Stewart always follows the instructions of Dr. McFarland on all medical issues.  (Stewart Aff. ¶ 19.)

Internal grievance procedures at the Lee County Detention Facility are available to all inmates.  It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit

grievances and that each grievance will be acted upon. (Jones Aff. ¶ 24; Torbert Aff. ¶ 23; Roberson Aff. ¶ 23; Welch Aff. ¶ 23.)   All inmates are provided access to a Lee County Detention Center Inmate Handbook.   A copy of this handbook is placed in each cellblock for inmates to review whenever they wish.   The inmate handbook states that an inmate may report a grievance on an inmate request form.   Grievances are first answered by the appropriate staff at the lowest level in the chain of command.   The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision.   (Jones Aff. ¶ 25; Torbert Aff. ¶ 24; Roberson Aff. ¶ 24; Welch Aff. ¶ 24.)

Neither Sheriff Jones, Major Torbert, Lieutenant Roberson, Lieutenant Welch, nor Dr. McFarland have ever received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint.   (Jones Aff. ¶ 8; Torbert Aff. ¶ 7; Roberson Aff. ¶ 7; Welch Aff. ¶ 7, McFarland Aff. ¶ 18.)   Nurse Stewart has not received a grievance from the Plaintiff during his most recent incarceration, and there are no grievances from his most recent incarceration in his medical file.   (Stewart Aff. ¶ 18; Exhibit K, Medical File[10].)   The request forms that could possibly be construed as grievances do not concern the conditions of the Plaintiff's confinement; instead they involve medical requests only.   (Stewart Aff. ¶ 18.)   Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Major Torbert and Sheriff Jones if he were not satisfied with the response at the lower levels in the chain of command.   The Plaintiff has not appealed *any* grievance to either of them.   Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center.   (Jones Aff. ¶ 26; Torbert Aff. ¶ 25.)   The Plaintiff was aware of the method for

---

[10] The documents in the Plaintiff's Inmate Medical File that are not referenced as separate exhibits are attached hereto as Exhibit K.

submitting grievances.  All properly submitted nonmedical grievances are answered, and a copy is placed in the inmate's inmate file.  All properly submitted medical grievances are answered, and a copy is placed in the inmate's medical file.  (Jones Aff. ¶ 27; Torbert Aff. ¶ 26; Roberson Aff. ¶ 26; Welch Aff. ¶ 26; Stewart Aff. ¶ 18.)  Upon the Jail Administrator's review of the Plaintiff's inmate file, there are no grievances concerning the allegations made the basis of his Complaint.  (Torbert Aff. ¶ 26; Exhibit L, Inmate File[11].)

It is the policy of the Lee County Sheriff's Office that inmates incarcerated in the Lee County Detention Center are provided with a nutritionally adequate diet.  (Jones Aff. ¶ 28; Torbert Aff. ¶ 27; Roberson Aff. ¶ 27; Welch Aff. ¶ 27.)  Inmates are served three meals each day at regularly scheduled times.  At least two of these meals are hot and there is no more than 14 hours between the evening meal and breakfast.  (Jones Aff. ¶ 29; Torbert Aff. ¶ 28; Roberson Aff. ¶ 28; Welch Aff. ¶ 28.)  All meals are served at the appropriate temperature as soon as possible after they are prepared.  (Jones Aff. ¶ 30; Torbert Aff. ¶ 29; Roberson Aff. ¶ 29; Welch Aff. ¶ 29.)  Consideration is given to texture, color, flavor and appearance in food preparation. (Jones Aff. ¶ 31; Torbert Aff. ¶ 30; Roberson Aff. ¶ 30; Welch Aff. ¶ 30.)  The Lee County Detention Facility menus are reviewed regularly by a registered dietician to ensure that inmates are provided with a nutritionally adequate diet.  (Jones Aff. ¶ 32; Torbert Aff. ¶ 31; Roberson Aff. ¶ 31; Welch Aff. ¶ 31.)  Lieutenant Ray Roberson, the Assistant Jail Administrator, is in charge of overseeing the Lee County Detention Facility meal program.  (Jones Aff. ¶ 33; Torbert Aff. ¶ 32; Roberson Aff. ¶ 32; Welch Aff. ¶ 32.)  The Plaintiff was not given any food different from that given other inmates except when instructed by Dr. McFarland to do otherwise for medical reasons.

---

[11] The documents in the Plaintiff's Inmate File that are not references as separate exhibits are attached hereto as Exhibit L.

(Jones Aff. ¶ 23 & 34; Torbert Aff. ¶ 22 & 33; Roberson Aff. ¶ 22 &33; Welch Aff. ¶ 12 & 33; Torbert Aff. ¶ 22.)

It is the policy of the Lee County Sheriff's Office to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff.  (Jones Aff. ¶ 35; Torbert Aff. ¶ 34; Roberson Aff. ¶ 34; Welch Aff. ¶ 34.)  Inmates have access to Clorox and water every day so that they may clean their living areas.  Further, the inmates are provided with germicide which is designed especially to combat mildew.  The Lee County Detention Facility uses a steam sanitizer on a regular basis to clean the shower areas of the Facility.  (Jones Aff. ¶ 36; Torbert Aff. ¶ 35; Roberson Aff. ¶ 35; Welch Aff. ¶ 35.)

It is the policy of the Lee County Sheriff's Department to allow persons incarcerated in the Lee County Detention Center the opportunity to worship in the recognized religion of their choice and receive religious counseling.  (Jones Aff. ¶ 37; Torbert Aff. ¶ 36; Roberson Aff. ¶ 36; Welch Aff. ¶ 36.)

Administrative segregation inmates are those who present a threat to themselves, others, property, security, or the order of the facility.  These inmates may require additional security supervision during movement and programs.  (Jones Aff. ¶ 38; Torbert Aff. ¶ 37; Roberson Aff. ¶ 37; Welch Aff. ¶ 37.)  Segregated inmates, with the exception of those in disciplinary segregation, have the same access to programs and services as general population inmates, unless privileges must be curtailed to protect the inmate or others, or to maintain facility security. (Jones Aff. ¶ 39; Torbert Aff. ¶ 38; Roberson Aff. ¶ 38; Welch Aff. ¶ 38.)  No person placed in administrative segregation is denied the right to practice his religion, to medical treatment, food, or other basic necessities.  (Jones Aff. ¶ 40; Torbert Aff. ¶ 39; Roberson Aff. ¶ 39; Welch Aff. ¶ 39.)

Neither Dr. McFarland nor Nurse Stewart has either duty or authority with regard to the conditions of the Detention Center, and their only involvement with inmates is in rendering medical care. (McFarland Aff. ¶ 30; Stewart Aff. ¶ 20.)

All the Defendants have complied with all policies and procedures of the Lee County Detention Facility. They are not aware of nor have they authorized or allowed any deviation from said policies and procedures. (Jones Aff. ¶ 41; Torbert Aff. ¶ 41; Roberson Aff. ¶ 40; Welch Aff. ¶ 40; McFarland Aff. ¶ 31; Stewart Aff. ¶ 21.)

2004 Incarceration

The Plaintiff was booked into the Lee County Detention Center on March 15, 2004. (Exhibit A; Stewart Aff. ¶ 22). On March 31, 2004, his blood work revealed that he had HIV and syphilis. Nurse Stewart called him to the clinic to inform him of the results, and he told her that he knew already and that he was diagnosed in 1998. Nurse Stewart asked him why he did not tell the booking officer upon medical screening, and he said that they would find out. Nurse Stewart placed in an individual living cell and had a representative from the Public Health Department come speak with the Plaintiff on April 6, 2004. (Stewart Aff. ¶ 22; Exhibit 1 to Stewart Aff., Medical File, Notes dated March 31, 2004, and April 6, 2004.) On May 26, 2004, Nurse Stewart examined the Plaintiff after he complained of problems with his skin including an abscess on his scalp. Nurse Stewart treated him with fungal soap and lotion and set him up with an appointment to see the medical doctor. (Stewart Aff. ¶ 23; Exhibit 2 to Stewart Aff., Medical File, Notes dated May 26, 2004.)

On June 2, 2004, Dr. McFarland examined the Plaintiff. Dr. McFarland noted that the Plaintiff has had HIV since 1998 but had not been on any mediation. Dr. McFarland noted that the Plaintiff had some Mulluscum contagiosa of his scalp and that his fungal infection had

11

cleared. Mulluscum contagiosa normally goes away without treatment. Dr. McFarland spoke with the Plaintiff about decreasing the spread of his Molluscum. The Plaintiff said that he thought it was clearing up and getting better. Dr. McFarland noted that he would recheck him as needed. (McFarland Aff. ¶ 19; Exhibit 1 to McFarland Aff., Medical File, Notes dated June 2, 2004.)

Former Jail Nurse Burke saw the Plaintiff on July 10, 2004 for a risen between the cheeks of his buttocks. (Exhibit M, Medical File, Notes dated July 10, 2004.) She noted that there was no drainage from the risen. (Id.) She prescribed Motrin for pain and set the Plaintiff up for an appointment with the medical doctor. (Id.) Dr. McFarland saw the Plaintiff on July 14, 2004 for the risen between his buttock cheeks. Dr. McFarland noted again that the Plaintiff had never been on any medications for his HIV, but that his HIV was diet controlled. Dr. McFarland prescribed Septra DIS twice a day and extra servings of meals. (McFarland Aff. ¶ 20; Exhibit 2 to McFarland Aff., Medical File, Notes dated July 14, 2004.) Dr. McFarland did not determine a need for any further treatment at that time. (McFarland Aff. ¶ 21.) Dr. McFarland also noted that the Plaintiff was about to be transferred to the Department of Corrections, and approximately one week later he was so transferred. (McFarland Aff. ¶ 20.) The Plaintiff was given his prescribed medications until his transfer. (Exhibit N, Medical File, Medication Administration Record.)

2006 Incarceration

Upon the Plaintiff's most recent admission to the Lee County Detention Center, it was determined that the Plaintiff was a safety and security risk. Further, all inmates who are HIV positive are asked to sign a form stating that they will abstain from sexual activity while in the Lee County Detention Center. The Plaintiff refused to sign this form. Because of these two reasons, the

Plaintiff was placed in administrative – not disciplinary – segregation. The Plaintiff was still entitled to the privileges as outlined in the policies and procedures above. For example, he had use of the phone, mail, visitation, and library. He was also allowed one hour outside every day. He was also allowed to schedule visits with the religious counselor or minister of his choice at any time. (Torbert Aff. ¶ 40.)

The day after the Plaintiff was booked into the Lee County Detention Center in May 2006, Nurse Stewart attempted to gather all his medical records in order to determine what medications he was supposed to be taking. All the medicine that he had with him was outdated. He informed Nurse Stewart that he had been living in a homeless shelter for a while and had not been on any medications. (Stewart Aff. ¶ 24; Exhibit 3 to Stewart Aff., Medical File, Notes dated May 26, 2006.) He was incarcerated at the Lee County Detention Center for less than two months during this stay. (Stewart Aff. ¶ 24.) That same day Nurse Stewart obtained his signature on a medical release so that she could try to find out how he had been treated so that they could determine the proper course of treatment while he was incarcerated. (Stewart Aff. ¶ 25; Exhibit 4 to Stewart Aff., Medical File, Release.) She also faxed the medical release to the Birmingham AIDS outreach on that same day. (Stewart Aff. ¶ 26; Exhibit 5 to Stewart Aff., Medical File, Fax Cover Sheet with Release.)

On May 30, 2006, Nurse Stewart received a letter from William M. Brown, a Licensed Social Worker with Birmingham AIDS outreach. Mr. Brown informed Nurse Stewart that he had done an intake on the Plaintiff on May 10, 2006. The Plaintiff did not provide any medical information to Mr. Brown but stated that he was not in care at that time. Mr. Brown referred the Plaintiff to the St. George Clinic at Cooper Green Hospital. The Plaintiff reportedly was living at the Firehouse Shelter at that time. (Stewart Aff. ¶ 27; Exhibit 6 to Stewart Aff., Letter from

13

William M. Brown.)   On May 31, 2006, Nurse Griffin called the Jimmy Hill Mission in Birmingham and asked for his medication to be mailed.   They would not mail his medications but gave a list of his medications and the name of the pharmacy where the medications came from.  (Exhibit O, Medical File, Notes dated May 31, 2006.)

Dr. McFarland saw the Plaintiff on May 31, 2006.  (McFarland Aff. ¶ 22; Exhibit 3 to McFarland Aff., Medical File, Notes dated May 31, 2006.)  Dr. McFarland noted that he had not been on medications as of May 10, 2006, but that he was on many different medications as of last week.  Dr. McFarland noted that the Plaintiff looked healthy and that his heart and lungs were clear.  He noted that the Plaintiff had with him a number of medications dating back to 2003, some of which had been taken, and some of which had not been taken.  (Exhibit 3 to McFarland Aff., Medical File, Notes dated May 31, 2006.)  He instructed the nursing staff to obtain medical records from the St. George Clinic so that he could determine the proper course of treatment.  Dr. McFarland noted that he would recheck the Plaintiff the next week when the nursing staff had more information on him.  (McFarland Aff. ¶ 22; Exhibit 3 to McFarland Aff., Medical File, Notes dated May 31, 2006.)  On May 31, 2006, per Dr. McFarland's orders, Nurse Stewart faxed a release and request for medical information to the St. George Clinic.  (Stewart Aff. ¶ 28; Exhibit 7 to Stewart Aff., Medical File, Fax Cover Sheet and Release dated May 31, 2006.)  On June 1, 2006, Nurse Stewart received the medical records form St. George's Clinic. (Stewart Aff. ¶ 29; Exhibit 8 to Stewart Aff., Medical File, Records from St. George's Clinic.)

On June 6, 2006, Dr. McFarland reviewed the Plaintiff's medical records and discussed the Plaintiff's situation with him.  Several weeks ago, he was housed at the Jimmy Hale Mission where he had been on medications for AIDS.  However, several weeks before he came to the Lee County Detention Center, he had left the Mission.  Therefore, for several weeks he had been off

his medications and was homeless prior to coming to the Detention Center.  (McFarland Aff. ¶ 23; Exhibit 4 to McFarland Aff., Medical File, Notes dated June 6, 2006.)  Dr. McFarland understood that he was having his parole revoked so that he could go back to the Limestone Correctional Facility.  (McFarland Aff. ¶ 24; Exhibit 4 to McFarland Aff., Medical File, Notes dated June 6, 2006.)  Dr. McFarland determined that the Plaintiff needed to be permanently sent either back to the Mission in Birmingham or the Limestone Correctional Facility where he could be consistent with his medications.  (McFarland Aff. ¶ 25; Exhibit 4 to McFarland Aff., Medical File, Notes dated June 6, 2006; Stewart Aff. ¶ 30.).)  Dr. McFarland was concerned that the Plaintiff would be released from the Lee County Detention Center and return to his homeless situation.  Therefore, Dr. McFarland did not restart any of the medications that he had stopped taking out of concern that he would stop taking the medications again once released.  (McFarland Aff. ¶ 25; Exhibit 4 to McFarland Aff., Medical File, Notes dated June 6, 2006.)  Dr. McFarland determined that it would be better to restart the medication once he was in a permanent housing situation (whether it be at the mission or at the correctional facility) in order to prevent the risk of restarting and restopping the medication an additional time.  (McFarland Aff. ¶ 26; Exhibit 4 to McFarland Aff., Medical File, Notes dated June 6, 2006.)  Stopping and starting AIDS medications can have a very detrimental effect because it can create viral resistance to these drugs.  (McFarland Aff. ¶ 27.)

During this same examination, the Plaintiff complained of a rash on his back.  Dr. McFarland examined his back but did not see a rash.  Dr. McFarland noted that his heart was regular and his lungs were clear.  His psychological affect was calm and even intelligent.  (McFarland Aff. ¶ 28; Exhibit 4 to McFarland Aff., Medical File, Notes dated June 6, 2006.)

Dr. McFarland's instructions were followed, and the Plaintiff was released to Limestone Correctional Facility within a matter of weeks. (McFarland Aff. ¶ 29; Stewart Aff. ¶ 30.) Nurse Stewart followed Dr. McFarland's orders with regard to the Plaintiff's medical care. (Stewart Aff. ¶ 19.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983

16

and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3.

**B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility.  Despite the availability of a grievance procedure at the Lee County Detention Facility, the Plaintiff arguably failed to file a grievance at all.  The only request forms that can possibly be construed as a grievance are from 2004 and apply to his medical care only.  In any case, the Plaintiff has failed to exhaust the grievance procedure by appealing any grievance to either Major Torbert or Sheriff Jones.  Therefore, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Facility.

Second, the Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Lee County is a state officer, as are his alter egos, and therefore, they would be entitled to sovereign immunity.  See Lancaster, 116 F.3d at 1429.  Due to this immunity, the

State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former § 1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731, 741 (2001) (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

> **2.      The Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).  Because the Plaintiff has not alleged a physical injury that is greater than de minimis, his Complaint is due to be dismissed.

> **C.      The Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and jail officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d

18

1252, 1267 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

### 1.    The Plaintiff's Constitutional Rights were not violated.

#### a.    Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:    (1) a condition of confinement that inflicted unnecessary pain or suffering

19

[constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry.  Wilson v. Seiter, 502 U.S. at 290.  In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

### (1)    Objective Component

With regard to the objective component, the Eleventh Circuit has held that "*extreme* deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment.[12]  Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original).  "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "[T]he Constitution does not mandate comfortable prisons."  Chandler, 379 F.3d. at 1289.  In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

It is clear that the condition alleged in the Plaintiff's Complaint was not "extreme" as to rise to the level of a constitutional violation.  Although the Plaintiff was segregated, he was still

---

[12] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.  But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial detainees.'"  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

entitled to the privileges such as use of the phone, mail, visitation, and library. He was also allowed one hour outside every day. He was also allowed to schedule visits with the religious counselor or minister of his choice at any time. He was given regular meals and cleaning supplies to clean his cell.

Further, the fact that the Plaintiff was subject to administrative segregation was not unconstitutional because it was rationally related to legitimate security concern. See, e.g., Harris v. Thigpen, 941 F.2d 1495, 1521 (11th Cir. 1991) (finding that administrative segregation of all HIV inmates was rationally related to legitimate security concern). The Plaintiff in the instant case was found to be a safety and security risk because he refused to sign the form stating that he would not engage in sexual activity and for other reasons as well. Lawson v. Singletary, 85 F.3d 502 (11th Cir. 1996) ("[C]ourts have 'accorded wide-ranging deference [to prison administrators] in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'") (modification in original). Therefore, based on Eleventh Circuit precedent, the Plaintiff's administrative segregation was lawful.

Clearly, the Plaintiff's conditions of confinement are not extreme as would form a constitutional violation.

### (2)    Subjective Component

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means

to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986).  There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.  The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 837-39.  No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536.

In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not alleged that any of the Defendants knew of or disregarded that risk.  The Plaintiff does not allege how any of the Defendants were aware of or were indifferent to any of the alleged conditions.  In fact, he does not mention any of the Defendants' names in relation to conditions of confinement claims in the body of his Complaint.  As to Dr. McFarland and Nurse Stewart, the evidence is clear that he has neither duty nor authority with regard to the conditions of the Detention Center, and their only involvement with inmates is in rendering medical care.  Therefore, the Plaintiff has failed to sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions.

Because the Plaintiff cannot meet the objective or subjective tests as set forth in <u>Farmer,</u> *supra*, his conditions of confinement claims are due to be dismissed.

Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. <u>Porter v. Nussle</u>, 534 U.S. 516, 528 (2002). The Plaintiff cannot show that he suffered an injury that is greater than *de minimus* as a result of the alleged conditions of his confinement. Accordingly, the Plaintiff cannot sustain a conditions of confinement claim.

### b.    Medical Claims

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment[13] violation only if those needs are "serious." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

> In our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

<u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted) (modification in original).

A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a

---

[13] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'" <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. at 845-47.  Mere negligence does not suffice to prove deliberate indifference.  Farmer, 511 U.S. at 835 ("Deliberate indifference describes a state of mind more blameworthy than negligence.").  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

No deliberate indifference was shown in the instant case.  The evidence is clear that the Plaintiff was given medical care in the instant case.  Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).  An inmate does not have a right to a *specific* kind of treatment.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the

adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

In <u>Faison v. Rosado</u>, the inmate complained that the jail doctor did not refer him to a physical therapist even though the orthopedic specialist had recommended it. The doctor responded that the orthopedist's comment was just that the plaintiff should see a physical therapist *if* one was available. The Court held that, "although Faison might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim." <u>Faison v. Rosado</u>, 129 Fed. Appx. 490, 492 (11th Cir. 2003); <u>see also</u> <u>Adams v. Poag</u>, 61 F.3d 1537 (11th Cir. 1995) (question of medical judgment cannot make out a basis for imposing liability under § 1983). The Court further stated: "Even if physical therapy was a part of a more aggressive treatment plan, Dr. Monserrate's failure to refer Faison to a physical therapist may amount to negligence but not to a cognizable constitutional claim."

In the instant case the evidence is clear that the Plaintiff was treated by the Jail Nurse and Medical Doctor during both of the incarcerations of which he complains. Dr. McFarland used his sound medical judgment in his treatment of the Plaintiff, and Nurse Stewart and the other Defendants relied on that judgment. Just as in the above-cited cases, in the case at bar, the Plaintiff's disagreement with the method of treatment does not rise to a § 1983 claim. The Plaintiff can make no showing whatsoever of deliberate indifference on the part of Dr. McFarland or any of the other Defendants.

Furthermore, the nonmedical Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. In <u>Meloy v. Bachmeier</u>, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical

25

director[14] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations.  "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."  Meloy, 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).  Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription."  Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision.  Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849; see also Brownell v. Figel, 950 F.2d 1285, 1291-92 (3d Cir. 1991) (granting summary judgment to police officer after rejecting plaintiff's contention that "the due process clause requires police to second guess a doctor's diagnosis in all instances where intoxicated accident victims display aberrant behavior."); Rowe v. Rivera, 2000 WL 1507447, *6 (D.N.H. 2002) ("The defendants' reliance on the opinions of the doctors who examined Rowe after Dr. Hogan recommended surgery and who believed that his condition was not urgent does not constitute deliberate indifference to a substantial risk to Rowe's health."); Rosas v. Lane, 1987 WL 15762, *2 (N.D. Ill. 1987) ("Loathe to second-guess the judgment of medical health care professionals, courts rarely find violations of the Eighth Amendment in disputes between inmates and medical staff as to the appropriateness of a diagnosis or the adequacy of treatment actually rendered."); Ellison v. Scheipe, 570 F. Supp. 1361, 1363-64 (E.D. Pa. 1983) ("[P]rison

---

[14] The medical director was a trained and licensed nurse.  302 F.3d at 846.

26

officials cannot be required to second guess the medical judgment of the physician."). This Court reached a similar conclusion in <u>Shepard v. Stidham</u>, 502 F. Supp. 1275 (M.D. Ala. 1980). In <u>Shepard</u>, the Court held that the prison officials acted reasonably in reliance on the recommendation of the physician, and therefore no deliberate indifference was shown. <u>Id.</u> at 1281-82.

In the instant case, the evidence shows that Plaintiff was treated by the Jail Nurse and the Jail Medical doctor for all his medical problems. The orders of Dr. McFarland were followed. Sheriff Jones, Major Torbert, Lieutenant Roberson, and Lieutenant Welch, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors. Furthermore, Nurse Stewart, like the director in <u>Meloy</u> and like the prison officials in <u>Shepard</u>, cannot, and should not, second guess the judgment of Dr. McFarland. <u>See</u> <u>Fillebrown v. Zettlemoyer</u>, 1996 WL 460051, at *3 (E.D. Pa. 1996) ("[P]rison administrators and the nursing staff of the prison infirmary cannot be found deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the recommendations of the treating physician. Since [the] defendants were entitled to rely upon the recommendations of the treating physician, their conduct did not amount to deliberate indifference."). The evidence shows that medical orders were followed at all times, and that the medical orders were based on Dr. McFarland's sound medical judgment. Therefore, Defendants were in no way deliberately indifferent as would violate the Plaintiff's constitutional rights.

> **2.    No clearly established law provided the Defendants with fair warning that their conduct was unlawful.**

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct

was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful in any of the areas of which the Plaintiff complains.  Therefore, Defendants are entitled to qualified immunity.

**D.    The Plaintiff cannot establish the elements of an Americans with Disabilities Act claim.**

The Plaintiff's claims under the ADA fail as a matter of law because he is not a "qualified individual" under the ADA in this context.  See Onishea v. Hopper, 171 F.3d 1289, 1295 & 1301 (11th Cir. 1999); Edwards v. Alabama Dep't of Corr., 81 F. Supp. 2d 1242, 1248-49 (M.D. Ala. 2000).

**E.    The Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege sufficient allegations demonstrating that *any* of the Defendants were involved in the allegations which form the basis of his claim regarding his conditions of confinement.  Further, the evidence is also clear that Dr. McFarland and Nurse Stewart had neither duty nor authority with regard to the jail conditions.  As to the medical claims, the Plaintiff has not shown how any of the nonmedical Defendants were in any way involved in the alleged deprivation.

The lack of factual allegations against the Defendants make it clear that the Plaintiff is attempting to hold the Defendants liable on the theory of *respondeat superior*.  To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that

29

constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants. As such, Plaintiff's conditions of confinement claims are due to be dismissed against all the Defendants and the medical claims are due to be dismissed as to the nonmedical Defendants for lack of personal involvement.

      **F.    This Court lacks subject matter jurisdiction over the Plaintiff's claims for injunctive relief.**

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims. See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). In the instant case, this Court lacks subject matter jurisdiction over the Plaintiff's claims for injunctive relief because he has been released from the Lee County Detention Center. Subject matter jurisdiction is absent because the Plaintiff's claims are moot and because he lacks standing to pursue his claims.

      **1.    Plaintiff's claims for injunctive relief are moot.**

"[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). Because Plaintiff has been released from the Lee County Jail, his claims for injunctive relief are moot. Zatler, at 399 ("In view of [the plaintiff's] subsequent

release [from the correctional facility where claims arose], we find that his claims for declaratory and injunctive relief are now moot."); see also Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred. Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects."   (citations omitted)); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (holding that prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." (citation omitted)).  Accordingly, the Plaintiff's request for injunctive relief is moot.

## 2.    The Plaintiff lacks standing to pursue his claims.

A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-10 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights.  461 U.S. 95, 97 (1983).  The plaintiff sought an injunction barring the future use of police chokeholds.  Id. 461 U.S. at 98.  After the Ninth Circuit affirmed the district court's grant of a preliminary injunction,

31

the United States Supreme Court reversed, holding that the plaintiff lacked standing. Id. 461 U.S. at 99-100. The Court stated that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* again create a disturbance in the jail and *might* be subjected to another chokehold. Id. 461 U.S. at 108. The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold. Id.

Here, any injunctive relief is equally speculative. Because he is no longer incarcerated in the Lee County Detention Center, the Plaintiff's claim is, in essence, that he *might* be released from the facility at which he is currently incarcerated, *might* be stopped by police, *might* be arrested by an officer with authority to incarcerate someone in the Lee County Detention Center, that he *might* be booked into the Lee County Detention Center, that he *might* be subjected to the alleged actions and/or conditions made the basis of his Complaint. Such speculation into future conduct does not grant the Plaintiff standing. Lyons, 461 U.S. at 108.

Accordingly, the Plaintiff's request for injunctive relief are due to be dismissed for lack of standing.

**G.    Statute of limitations**

All actions complained of occurring prior to July 5, 2004, are barred by the applicable statute of limitations. See Moore v. Liberty Nat. Life Ins. Co., 267 F.3d 1209 (11th Cir. 2001); Lufkin v. McCallum, 956 F.2d 1104 (11th Cir. 1992); Everett v. Cobb County School Dist., 138 F.3d 1407, 1408-10 (11th Cir. 1998); ALA. CODE § 6-2-38.

**H.    Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a

plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. <u>See Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[15] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (<u>en banc</u>) quoting <u>Massachusetts Sch. of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff David Lee Smith in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 27th day of September, 2006.

---

[15] Although <u>Reeves</u> was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" <u>Reeves</u>, 530 U.S. at 150, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

**s/Amanda Kay Morgan**
AMANDA KAY MORGAN Bar No.  ALL079
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  amorgan@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of September, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

David Lee Smith
AIS 164818
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL 35742

**s/Amanda Kay Morgan**
OF COUNSEL

34